DION-KINDEM & CROCKETT
Steven R. Skirvin (Utah Bar No. 7626)
srs@dkclaw.com
10808 S. River Front Parkway, Suite 334
South Jordan, UT 84095
Telephone: (801) 984-8045; Facsimile: (801) 984-4315
*Proposed Local Counsel to Debtor*

AFFELD GRIVAKES ZUCKER LLP
David Affeld, (CA Bar 123922)
dwa@agzlaw.com
Christopher Grivakes (CA Bar 127994)
cg@agzlaw.com
Gregg Zucker (CA Bar 166692)
gz@agzlaw.com
12400 Wilshire Blvd., Suite 1180
Los Angeles, CA 90025
Telephone: (310) 979-8700; Facsimile: (310) 979-8701
*Proposed Special Litigation Counsel to Debtor*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF UTAH

| In re: WESTERN UTAH COPPER COMPANY,<br><br>Debtor. | 2:10-bk-29159-WTT<br><br>Chief Judge William T. Thurman<br>Chapter 11<br><br>ADVERSARY NO: |
|---|---|
| WESTERN UTAH COPPER COMPANY,<br><br>Plaintiff,<br>vs.<br><br>BRIDGE LOAN CAPITAL FUND, LP, and BLOC MANAGEMENT, LLC.,<br><br>Defendants. | COMPLAINT FOR DAMAGES, FEES:<br>1. Violations of Utah Securities Act<br>2. Fraud<br>3. Breach of Fiduciary Duty<br>4. Unjust Enrichment<br><br>DEMAND FOR JURY TRIAL |

14

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter under Sections 157 and 1334 of Title 28 of the United States Code. On May 18, 2010, WUCC filed its voluntary petition for relief under Title 11 of the United States Code in the United States Bankruptcy Court for the District of Nevada, Case No. 10-51913gwz (the "Nevada Case"). On July 8, 2010, the Nevada Case was transferred *sua sponte* to the United States Bankruptcy Court for the District of Utah (the "Utah Case"). The present action is a civil proceeding arising out of and related to the Utah Case. The present action is a "core" proceeding under 28 U.S.C. §§157(b)(2)(A), (C) and (O). To the extent applicable, Plaintiff consents to entry of final judgment by the Court on any non-core claims.

2.      The Defendants have consented to jurisdiction in the District of Utah, have purposefully availed themselves of the rights and privileges of conducting activities in Utah, and have engaged in intentionally wrongful conduct knowing that it would have a direct and adverse impact on Debtor in the forum state. Venue is proper in Utah pursuant to the provisions of 28 U.S.C. § 1409(c).

## GENERAL ALLEGATIONS

### A.      Summary Of Claims

3.      This case involves the ongoing fraudulent offer and sale of securities perpetrated by an unlicensed broker-dealer Bridge Loan Capital Fund, L.P. ("BLoC") and its general partner BLoC Management LLC (collectively, "Defendants"). In 2006 and 2007, Defendants targeted investors and induced them to co-invest in promissory notes secured by deeds of trust in WUCC.

4.      To lure investors, Defendants touted the investments as safe and secure

investments that Defendants were investing in themselves. Specifically, defendants and their agents, including but not limited to Eric Barlow, represented to investors, among other things, that (1) the loans would be "secured," and (2) Defendants were putting their own money into the loans on the same terms and conditions as the investors.

5. These representations were and are all false. First, the Defendants did not make secured loans. The Defendants did not record any UCC-1 financing statements showing any of the investors as secured creditors on any of the loans. Instead, Defendants recorded a UCC-1 financing statement for themselves alone, and put themselves in a superior position to the investors. Second, the Defendants intentionally concealed from the investors that defendants had procured additional collateral in the form of personal guarantees for the benefit of Defendants only.

**B.　The Parties And Their Agents**

6. At all relevant times since the filing of the Nevada Case on May 18, 2010, WUCC was a Chapter 11 debtor in possession. As such, WUCC held all of the rights and powers of a trustee in bankruptcy pursuant to the provisions of 11 U.S.C. § 1107.

7. At all relevant times before May 18, 2010, WUCC was a corporation organized under the laws of the State of Utah.

8. WUCC is a wholly owned subsidiary of Copper King Mining Company ("Copper King"), a Nevada corporation that is publicly traded on the Pink Sheets Exchange under symbol CPRK.PK.

9. On information and belief, Defendant Bridge Loan Capital Fund, L.P. ("BLoC")

is a Utah limited partnership with its principal place of business in Utah.

10. On information and belief, Defendant BLoC Management LLC ("BLoC Management") is a Utah limited liability company with its principal place of business in Utah, and is the general partner of BLoC.

11. At all relevant times, John Pennington ("Pennington") was an individual residing in Utah. Upon information and belief, Pennington is the co-founder and fund manager for BLoC, and the managing member of BLoC Management. At all relevant times, Pennington acted as the agent for BLoC and BLoC Management in connection with the solicitation, brokering, documenting, escrowing of funds, and perfecting of security interests for the loans.

12. At all relevant times, Eric Barlow ("Barlow")was an individual residing in Utah, and acting as the agent for BLoC and BLoC Management in connection with the solicitation of the loans.

13. At all relevant times, Paul Hutchinson ("Hutchinson") was an individual residing in Utah, and acting as the agent for BLoC and BLoC Management in connection with the solicitation of the loans.

14. On information and belief, at all relevant times, Defendants, and each of them, were authorized and empowered by the other Defendants, and each of them, to act, and they did so act, as the agent, principal, partner, and co-conspirator of the other Defendants, and each of them, and all of the things alleged to have been done by them, and each of them, were done in the capacity of and as agents, principals, partners, and/or co-conspirators of such other Defendants.

C.　**BLoC's Brokering Of The Loans**

15.　In 2006 and 2007, Defendants and their representatives solicited and brokered loans secured by deeds of trust on property owned by WUCC. Defendants induced the investors to participate in the loans by representing that BLoC itself was investing in the loans.

16.　In January 2007, Defendants solicited and brokered loans with six month maturities in the aggregate face amount of $7.5 million (the "First Lien Loan").

17.　Through March 2007, Defendants solicited and brokered additional secured loans in the amount of approximately $4 million (the "Second Lien Loan").

18.　In October of 2007, Defendants solicited and brokered another loan secured with a third mortgage in the amount of $1 million (the "Third Lien Loan").

19.　At all relevant times, Pennington, Barlow and Hutchinson, among others, actively solicited investors to participate in loans for WUCC.

20.　Defendants provided and prepared the documentation for the investments, set up an escrow to accept the investments, directed the investors to fund the escrow, took multiple fees on the loans, and undertook to perfect security interests.

21.　BLoC took fees for purportedly acting as a "mortgage broker", and BLoC Management took fees for unspecified "services", on the loan transactions. Their total fees were in the hundreds of thousands of dollars. On information and belief, BLoC was not a licensed mortgage broker at any relevant time.

D.　**BLoC's Illegal Conduct, Fraud And Self-Dealing**

22.　Defendants' brokering of the loans was unlawful. Simply stated, Defendants were transacting business in Utah as a broker-dealer without being licensed pursuant to the Utah

5

Securities Act.

23.     Furthermore, Defendants made untrue statements of material fact, and omitted to state material facts necessary to make the statements made not misleading. Specifically, in March 20010, defendants presented the investors in the Second Lien Loans with loan documents, deeds of trust and security agreements, which represented that BLoC was participating in the loans on the same terms and conditions as all the other investors. Furthermore, Defendants' agent Barlow made the same representations throughout the parties' course of dealing.

24.     Defendants' representations were false. The true facts were that on March 22, 2007, BLoC had secretly obtained additional collateral with respect to the Second Lien Loans in the form of personal guarantees of $725,000 each from Eric Barlow, Marcus Southwerth and Mark Dotson. Defendants failed to inform the investors in the Second Lien Loans of these material facts. Had the investors in the Second Lien Loans known that BLoC had obtained or was going to obtain such guarantees for itself alone and not for its co-investors, the investors never would have invested in the loans.

25.     Furthermore, Defendants falsely represented that the loans were secured. Such representations were contained in the loan transaction documents which repeatedly refer to security interests. However, Defendants failed to perfect the security interests for the investors. Instead, Defendants perfected the interests for themselves alone by filing a UCC-1 financing statement in BLoC's name only. Among other things, the effect of the filing was to put BLoC in first position on WUCC's rolling stock, which was its most liquid asset.

26.     In June and July 2010, Plaintiff's representative John Bryan confronted Defendants and several investors with Defendants' failure to include the investors in the UCC-1

filing. On August 2, 2010, Defendants attempted to cover-up their wrongdoing by falsely claiming that the UCC-1 filing was somehow "shared pro-rata with all of the 2nd deed holders" even though the filing remained in BLoC's name only.

### FIRST CLAIM FOR RELIEF

### (Violations of Utah Securities Act)

### (By Plaintiff Against all Defendants)

27. Plaintiff realleges paragraphs 1 through 26 of this Complaint.

28. Plaintiff has obtained assignments from investors in the loans and is entitled to pursue their claims against Defendants.

29. Defendants unlawfully solicited investments in loans secured by deeds of trust in WUCC. Specifically, Defendants were not licensed broker-dealers when they offered the securities to the investors, yet Defendants were paid fees upon the closing of the loan transactions.

30. Defendants misrepresented to the investors that they were investing on the same terms and conditions as Defendants and intentionally failed to inform the investors that Defendants had obtained additional collateral in the form of personal guarantees for themselves alone.

31. Defendants falsely represented to the investors and intentionally failed to inform the investors that Defendants were obtaining secured loans. Instead, Defendants filed a UCC-1 financing statement for themselves alone and not for the investors.

32. Defendants' misrepresentations and failures to disclose, as aforesaid, were motivated by Defendants' desire to obtain superior rights and protections compared to the other

investors.

33.　Plaintiff, as assignee of the investors' claims, is entitled pursuant to Utah Code §61-1-22(1)(a) and (b) to recover the consideration paid, plus 12% interest from the date of their investments, plus costs and attorney's fees, less the amount of income received from the security upon tender of the securities, or is entitled to damages.

34.　Plaintiff, as assignee of the investors' claims, is also entitled pursuant to Utah Code §61-1-22(2) to an award of treble damages since the violations were reckless or intentional.

## SECOND CLAIM FOR RELIEF

### (Fraud)

### (By Plaintiff Against All Defendants)

35.　Plaintiff realleges paragraphs 1 through 34 of this Complaint.

36.　Defendants solicited investments in loans secured by deeds of trust in WUCC by representing that the loans would be "secured," and that Defendants were putting their own money into the loans on the same terms and conditions as the investors.

37.　Defendants misrepresented to the investors that they were investing on the same terms and conditions as Defendants and intentionally failed to inform the investors that Defendants had obtained additional collateral in the form of personal guarantees for themselves alone.

38.　Defendants falsely represented to the investors and intentionally failed to inform the investors that Defendants were obtaining secured loans. Instead, Defendants filed a UCC-1 financing statement for themselves alone and not for the investors.

39.　The investors relied upon Defendants' representations by making the investments

in the loans and closing on the loan transactions.

40.     The investors would not have invested in the loans had they known the truth.

41.     As a direct and proximate result of the foregoing misrepresentations, the Plaintiff, as assignee of the investors' claims, has been damaged as follows: (1) losses consisting of the entire amount invested in the loans, in a sum to be proven at the time of trial, (2) attorney's fees, (3) costs, (4) consequential damages to be proven at the time of trial.

### THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

### (By Plaintiff Against All Defendants)

42.     Plaintiff realleges paragraphs 1 through 41 of this Complaint.

43.     Defendants owed a fiduciary duty to the investors in the loans because they acted as a broker-dealer with respect to the loans.

44.     Defendants breached their fiduciary duties by misrepresenting to the investors that they were investing on the same terms and conditions as Defendants and intentionally failing to inform the investors that Defendants had obtained additional collateral in the form of personal guarantees for themselves alone. Defendants further breached their fiduciary duties by falsely representing to the investors and intentionally failing to inform the investors that Defendants were obtaining secured loans. Instead, Defendants filed UCC-1 financing statement for themselves alone and not for the investors.

45.     As a direct and proximate result of the foregoing misrepresentations, the investors have been damaged as follows: (1) losses consisting of the entire amount invested in the loans, in a sum to be proven at the time of trial, (2) attorney's fees, (3) costs, (4) consequential damages to

be proven at the time of trial. Plaintiff, as assignee of the investors' claims, is entitled to pursue such damage claims.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment)

### (By Plaintiff Against All Defendants)

46.     Plaintiff realleges paragraphs 1 through 45 of this Complaint.

47.     Defendants' procurement of additional collateral in the form of personal guarantees, and filing of UCC 1 financing statements for themselves alone, have unjustly enriched Defendants at the expense of the investors and is unjust. It is unconscionable for Defendants to have additional collateral and secured rights.

48.     Plaintiff, as the assignee of the investors, is entitled to be compensated in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests judgment against the Defendants, jointly and severally, as follows:

1.      For compensatory damages according to proof, plus prejudgment interest thereon at the legal rate;

2.      For punitive or treble damages;

3.      For costs of suit incurred herein, including reasonable attorneys' fees;

4.      For pre-judgment interest; and

//

//

5.  For such other and further relief as the Court deems proper.

Date: September 7, 2010                    DION-KINDEM & CROCKETT and
                                           AFFELD GRIVAKES ZUCKER LLP

                                           _____
                                           STEVEN R. SKIRVIN
                                           Attorneys for Plaintiff
                                           WESTERN UTAH COPPER COMPANY

## DEMAND FOR JURY TRIAL

    Plaintiff hereby demands a jury trial.

Date: September 7, 2010          DION-KINDEM & CROCKETT and
                                        AFFELD GRIVAKES ZUCKER LLP

                                        _____
                                        STEVEN R. SKIRVIN
                                        Attorneys for Plaintiff
                                        WESTERN UTAH COPPER COMPANY

FORM 104 (10/06)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>WESTERN UTAH COPPER COMPANY | DEFENDANTS<br>BRIDGE LOAN CAPITAL FUND, LP & BLOC MANAGEMENT LLC |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

VIOLATION OF UTAH SECURITIES ACT, FRAUD

**NATURE OF SUIT**

FRBP 7001(1) – Recovery of Money/Property
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

FRBP 7001(2) – Validity, Priority or Extent of Lien
☐ 21-Validity, priority or extent of lien or other interest in property

FRBP 7001(3) – Approval of Sale of Property
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

FRBP 7001(4) – Objection/Revocation of Discharge
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

FRBP 7001(5) – Revocation of Confirmation
☐ 51-Revocation of confirmation

FRBP 7001(6) – Dischargeability
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

FRBP 7001(6) – Dischargeability (continued)
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce/sep property settlement/decree
☐ 65-Dischargeability - other

FRBP 7001(7) – Injunctive Relief
☐ 71-Injunctive relief – reinstatement of stay
☐ 72-Injunctive relief – other

FRBP 7001(8) Subordination of Claim or Interest
☐ 81-Subordination of claim or interest

FRBP 7001(9) Declaratory Judgment
☐ 91-Declaratory judgment

FRBP 7001(10) Determination of Removed Action
☐ 01-Determination of removed claim or cause

Other
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

*FILED IN UNITED STATES BANKRUPTCY COURT 2010 SEP -7 PM 4:20 DISTRICT OF UTAH*

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

FORM 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Western Utah Copper Company | BANKRUPTCY CASE NO.<br>10-29159 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Utah | DIVISIONAL OFFICE<br>Salt Lake | NAME OF JUDGE<br>Thurman |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>[signature] | | |
| DATE 9/2/10 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Steve Skirvin | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Parties.** Give the names of the parties to the adversary proceeding exactly as they appear on the complaint. Give the names and addresses of the attorneys if known.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.